STATE of Missouri, Respondent,

v.

Christopher J. SANDERS, Appellant.

No. SD 31301.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 12, 2011.

Ellen H. Flottman, Columbia, for Appellant.

Chris Koster, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, Judge.

Appellant ("Defendant") complains that he was not allowed to show that no fingerprints were found on cocaine baggies that he was found guilty of possessing. We review for abuse of discretion and find none; indeed, the offer of proof supports the trial court's ruling. We affirm the judgment and conviction.

### Background / Complaint on Appeal

The sufficiency of the evidence is not at issue. We view the record favorably to the result (*State v. Colvin,* 312 S.W.3d 436, 437 (Mo.App.2010)), borrowing to some degree from Defendant's description of the facts.

Approaching from behind, two deputies heard Defendant offer to sell another man "some shit." One deputy tapped Defendant's shoulder. Defendant turned, got a "deer in the headlight" look, opened his hand, and dropped two small baggies of cocaine, which the deputies picked up. A jury found Defendant guilty in a trial where both deputies testified and Defendant did not.

The defense sought to show the baggies bore no fingerprints, and in an offer of proof, a Highway Patrol lab expert so testified. However, the expert also testified that in 5½ years and over 1,000 fingerprint cases, she had *never* found prints on small drug baggies like these. Further, the expert explained many reasons why fingerprints would not be found. This tes-

timony weighed heavily in the trial court's decision to exclude the evidence:

> I think the thing in this case as far as the Court is concerned is that the Court can't see any probative value of this evidence. If it was a situation where there was a piece of evidence that normally fingerprints would have been found, and the Defendant's was not found, and somebody else's fingerprints was found, or that it's a piece of evidence that the experts say we should be finding fingerprints on, then I think that perhaps that would come in.

> \*     \*     \*

> Here we have the evidence, we have the benefit of the expert testifying, and what the expert testifying is that in all the cases that the expert has looked at these samples that ... That she had never ever found a fingerprint, and the reason being the size. And then she goes into several reasons. Granted, one reason could be because the Defendant did not touch it, but the outside—or the bulk of the reasons are that she had never been able to even get a print to come on this size of a sampling. And so with that, I can't see why we—the Court is not inclined to let the Jury basically rove around and try to come up with their own ideas when she has never ever been able to get a fingerprint off this size. And the Court certainly doesn't think that it's proper for the Defense to come in and backdoor about they not being looked at for ten months, and what the Prosecutor or the police did or didn't do in preserving the evidence.[1]

Defendant's sole point on appeal challenges this ruling.

## Principles of Review

The trial court enjoyed broad discretion to admit or exclude this evidence. It erred only if it clearly abused that discretion, *i.e.*, a ruling so arbitrary, unreasonable, and against the logic of the circumstances as to shock the sense of justice and indicate a lack of careful consideration. *State v. Hopper*, 326 S.W.3d 143, 152 (Mo.App. 2010). Even then, to obtain relief, Defendant also must show prejudice—a reasonable probability of a different verdict but for the error. *Id.*

## Analysis

■ Defendant seems to assume value in this evidence, and error in its exclusion, without showing why either would be so. In some 1,000 cases spanning 5½ years, Defendant's proffered expert *never* found a fingerprint on such baggies. Law enforcement officers handled these baggies, but there were no fingerprints at all, suggesting that "no fingerprints" had no probative value as to Defendant's touching. Certainly, we cannot say the trial court abused its discretion in deeming any minimal probative value to be outweighed by risks of jury confusion or other prejudice. Legal relevance involves a balancing of probative value against risks of unfair prejudice, confusion of issues, misleading the jury, undue delay, etc. *State v. Miller*, 220 S.W.3d 862, 869 (Mo.App.2007). Trial courts have broad discretion to exclude marginally relevant evidence due to such concerns. *Id.*

1. Defendant does not dispute that the state generally need not check for fingerprints or account for their absence, and no adverse inference can be argued from the state's failure to do so. *State v. Schneider*, 736 S.W.2d 392, 402 (Mo. banc 1987). Here, the state had the baggies checked for fingerprints a year after the crime, at defense counsel's request, after this court issued its writ in *State ex rel. Sanders v. Crane*, 326 S.W.3d 131 (Mo. App.2010).

Defendant offers no case or persuasive argument showing the trial court's ruling to have been illogical, arbitrary, unreasonable, shockingly unjust, or ill-considered.[2] As Defendant has shown no abuse of discretion, we need not address his failure, as well, to prove prejudice. Defendant's point fails. The judgment and conviction are affirmed.

BARNEY and BATES, JJ., concur.

**2.** Citing *State v. Phillips,* 511 S.W.2d 841, 844 (Mo.1974), Defendant notes that "the correspondence or lack of correspondence of fingerprints" is a proper subject for expert testimony. We fail to see the connection; this is not a fingerprint-matching case. Similarly

inapposite is Defendant's reliance on *State v. Mansfield,* 637 S.W.2d 699 (Mo. banc 1982), *overruled on other grounds by State v. Clark,* 652 S.W.2d 123 (Mo. banc 1983). Mansfield involved an alibi witness, not fingerprints.